(83 App. Div. 388.)

PAYNE v. WILLIAMS.

(Supreme Court, Appellate Division, First Department. May 15, 1903.)

1. LOAN BROKER—CLIENT'S REFUSAL OF LOAN—MOTIVE—ADMISSIBILITY OF EVIDENCE.

In an action by a loan broker for commissions against a client who had refused to complete a loan after a lender had been secured, evidence that the client had sold property to supply him with the needed funds is admissible as bearing on the credibility of his testimony that he had refused the loan because an existing mortgage could not be paid off before maturity.

2. PROPER QUESTION—INCOMPETENT REPLY—METHOD OF RAISING OBJECTION.

Where immaterial evidence is given in response to a proper question, the proper method of raising an objection is by motion to strike out the testimony, or a request for an instruction that the jury disregard it; failing which, the admission of the testimony furnishes no ground for reversal.

3. LOAN BROKER—ACTION FOR COMMISSIONS—TERMINATION OF NEGOTIATIONS—ADMISSIBILITY OF EVIDENCE.

In an action by a loan broker for commissions against a client who had refused to take a loan after a lender had been secured, the defendant testified that he had told the lender's attorney that he would not complete the loan until he had arranged to pay an existing mortgage before maturity, and a day or so later told him that he had notified the mortgagee that the negotiations pending for the paying off of its lien had terminated. He was then asked, "What caused the making of that statement? What transpired between you" and plaintiff "that led you to make the statement to the" mortgagee "that the transaction had terminated"? Defendant had testified fully as to his conversation with plaintiff. *Held*, that an objection to the question was properly sustained.

4. SAME.

Defendant was also asked, "Then, in the course of the negotiations * * * for the making of this loan, was there any point at which they were apparently terminated?" *Held* objectionable.

Van Brunt, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Thomas P. Payne against John T. Williams. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Richard T. Greene, for appellant.

Jacob Marks, for respondent.

INGRAHAM, J. This action was brought to recover a broker's commission for procuring, at the defendant's request, a loan of $250,-000, to be secured by mortgages upon certain real estate owned by the defendant. The main controversy in the case was as to the plaintiff's employment, the plaintiff claiming that the employment was absolute and unqualified, while the defendant claimed that it was conditioned upon the Farmers' Loan & Trust Company, who held a mortgage upon the premises for $125,000, being willing to accept payment of the loan before maturity. Upon this question there was a conflict of evidence, and the question was submitted to the jury. No exception was taken to the charge by either party. The defendant seeks to reverse this judgment upon exceptions to rulings upon the admission of evidence. The plaintiff testified that he had an interview with the defendant at which the defendant asked him if he could not find some one that would make a loan of $250,000 as a building loan; that the defendant showed the plaintiff a plan of the building that he intended to construct, and upon which he wished the building loan to be made; that subsequent to that conversation the plaintiff procured a Mr. George B. Turrell, who was willing to make the loan; that on the 14th day of June, 1899, the plaintiff asked the defendant to give him the details in regard to the loan, whereupon the defendant gave to the plaintiff a letter as follows: "I will agree to take a loan of $250,000 from Mr. George B. Turrell on the corner of Beach and West streets under the following conditions, which I understand are acceptable to Mr. Turrell, namely." The details of the loan are then stated. This letter was submitted to the attorney for Mr. Turrell, and the loan was accepted. Subsequently the defendant told the attorney for Mr. Turrell that he did not desire the loan, and it was never completed. The defendant did not deny having employed the plaintiff to obtain a loan, but stated that he told the plaintiff that he had purchased the property upon which the loan was to be made subject to a mortgage of $125,000 held by the Farmers' Loan & Trust Company, which was not due, and which he had no privilege to pay off; that the only way that he could take the money on the property would be to get the consent of the Farmers' Loan & Trust Company to take their money on the first mortgage; that he afterwards called on the Farmers' Loan & Trust Company, and afterwards told the plaintiff that they thought they could arrange to take the money and put it in another loan that had been offered; that negotiations looking towards the placing of the new loan then proceeded; that the defendant subsequently went to the office of the attorney for Mr. Turrell, and stated to him that the making of any agreement with respect to the loan on the property was contingent upon his ability to pay off the loan held by the Farmers' Loan & Trust Company, and he refused to sign any agreement for the loan until the arrangements had been made with the Farmers' Loan & Trust Company to take the money, but that he agreed to a contract with Turrell, subject to the trust company accepting the money on their mortgage; that

subsequently the trust company refused to accept payment of the loan, and that in consequence of that refusal the loan was not accepted. Upon cross-examination the defendant was asked whether, at the time the loan was being negotiated, he was the owner of the premises on Broadway and Broome street, to which he answered that he was. He was then asked if he had been negotiating for the sale of this property; whether the value of that property was $800,-000; and the further question, "Didn't you sell that property, or make a contract for the sale of it, just about the time this contract for the loan was to have been closed?" These questions were objected to, and the objections overruled, to which the defendant excepted. The witness answered that $800,000 was the value of the property, and that he sold the property a couple of months after this negotiation with the plaintiff, and received therefor $300,000 in cash. Upon redirect examination he further testified that, in the latter part of July or some time in August, he offered the Broome street property for sale to Mr. J. B. Haggin, and that the same afternoon the sale was closed.

I think this evidence was proper upon cross-examination. The question between the plaintiff and the defendant was whether it was understood that the defendant had imposed, as a condition for accepting a loan, the consent of the Farmers' Loan & Trust Company to pay off the existing loan upon the property. The plaintiff expressly testified that there was no such condition, and the defendant testified that there was. In testing the credibility of the defendant's testimony, it was proper to show upon his cross-examination that the defendant had a motive for refusing to accept the loan after it had been arranged through the plaintiff's efforts, and this motive was shown by the fact that, after the agreement for the loan had been made, the defendant acquired by the sale of the Broome street property the money necessary to enable him to complete his building arrangements, so that the loan that had been arranged for was not required.

In determining whether or not the plaintiff or the defendant was to be believed as to the condition upon which he had agreed to accept the loan procured by the plaintiff, it was important for the jury to know the situation, and that there was a motive which would induce the defendant to repudiate his agreement to accept the loan procured by the plaintiff. The whole case depended upon the credibility of these two witnesses; and in testing that question it was, I think, competent to ask the defendant whether the necessity that existed for borrowing the money had ceased at the time he refused to carry out the arrangement. His testimony, however, as it stood, was that the property was sold after negotiations for the loan had ended. If the jury had believed that, it was immaterial; but, after that fact had been testified to, there was no motion to strike out the testimony that was given as to the sale of the property, and no request to the court to instruct the jury to disregard it. I do not think it was incompetent for the plaintiff to show, by a cross-examination of the defendant, that there was a motive which would induce the defendant to decline to accept the loan after it had been arranged for. The testimony, as it stood, failed to show that such a motive existed;

and, to raise the question, the defendant should either have then moved to strike out the testimony, or have asked the court to instruct the jury to disregard it. The questions were not improper upon cross-examination, and would not justify us in reversing the judgment.

The other exception relied on by the defendant was an exception to the court's sustaining an objection to two questions asked the defendant. The defendant had testified that he told the attorney for Turrell that he would not sign any contract for the loan until the arrangements had been made with the Farmers' Loan & Trust Company to take the money; that he had also told him, either on that day or within a day or two after, that he had notified the Farmers' Loan & Trust Company that the negotiations which were pending for the paying off of their loan and taking up the new loan had terminated, and that, therefore, he would not pay the loan until it matured. He was then asked: "What caused the making of that statement? What transpired between you and Mr. Payne or Mr. Larned that led you to make the statement to the Farmers' Loan & Trust Company that the transaction had terminated?" That was objected to, objection sustained, to which the defendant excepted. He was then asked: "Then, in the course of the negotiations between you and Mr. Larned or Mr. Payne for the making of this loan, was there any point at which they were apparently terminated?" That was objected to, objection sustained, to which the defendant excepted. I think both of these questions were objectionable. As a part of the first question, the witness was asked: "What caused the making of that statement?" That certainly was incompetent, and it was also incompetent to ask what transpired between the witness and Mr. Payne that led him to make the statement to the Farmers' Loan & Trust Company. He had testified fully as to his conversation with the plaintiff or with Mr. Larned. The second question was also entirely immaterial. Whether there was any point at which the negotiations between the witness and Mr. Larned or Mr. Payne had apparently terminated was entirely immaterial. The question was as to what was said and done. I think this case was fairly submitted to the jury, and that there was no ruling upon any question of evidence to justify a reversal of the judgment.

It follows that the judgment and order appealed from should be affirmed, with costs.

O'BRIEN and McLAUGHLIN, JJ., concur. VAN BRUNT, P. J., and LAUGHLIN, J., dissent.